Henry GEORGE, Appellant,

v.

STATE of Alaska, Appellee.

No. A–5930.

Court of Appeals of Alaska.

Sept. 5, 1997.

Scott Jay Sidell, Anchorage, for Appellant.

G. Blair McCune, Assistant Public Defender, and John B. Salemi, Public Defender, Anchorage, for the Alaska Public Defender Agency, amicus curiae.

Cynthia M. Cooper and Timothy W. Terrell, Assistant Attorneys General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before COATS, C.J., MANNHEIMER, J., and JOANNIDES, District Court Judge.*

MANNHEIMER, Judge.

Under Alaska law prior to July 1995, indigents who wished to commence litigation against the State could apply to the courts for a total waiver of the normal filing fee under Alaska Administrative Rules 9(f) and 10. In the 1995 legislative session, however, the Alaska legislature enacted a statute, AS 09.19.010, which limits the courts' authority to waive filing fees in lawsuits brought by prisoners against the state government. *See* 1995 SLA, ch. 79, § 1. Under this new law, a court must in all cases require the prisoner to pay a filing fee "equal to 20 percent ... of the average monthly deposits made to the prisoner's [prison] account ... or the average balance in that account", whichever is greater (unless this calculation yields a figure larger than the normal filing fee). *See* AS 09.10.010(d).

Henry George is a prisoner who unsuccessfully sought post-conviction relief in the superior court and who now wishes to pursue an appeal to this court. Under Alaska Administrative Rule 9(a)(1), the filing fee for an appeal to this court is $100. Claiming indigency, George lodged his appellate pleadings with no filing fee. The State asked this court to dismiss George's appeal unless he paid a filing fee under AS 09.19.010. (According to the financial information George has submitted, his minimum filing fee under this statute would be $2.21.) George responded by asserting that AS 09.19.010 is unconstitutional and that he should be able to pursue this appeal without paying any fee.

For the reasons explained in this opinion, we conclude that AS 09.19.010 is constitutional. Therefore, even though George is not

---

* Sitting by assignment of the chief justice made pursuant to Article IV, Section 16 of the Alaska Constitution.

able to pay the full $100 filing fee, he must apply for an exemption under AS 09.19.010, and he is subject to the minimum fee set by that statute.

### Explanation of the statute at issue here

AS 09.19.010 governs the filing fees that prisoners must pay to commence litigation against the State.[1] AS 09.19.010(a) declares that, with the exception of claims under AS 23.20 (the Alaska Employment Security Act), a prisoner who commences litigation against the state must pay the full prescribed filing fees unless "the court exempt[s][the] prisoner from paying part of those fees [upon a finding of] exceptional circumstances". A prisoner seeking this partial exemption must submit (A) complete information concerning his or her income, assets, and liabilities; (B) an explanation of the circumstances that prevent the prisoner from paying full filing fees; and (C) an explanation of the prisoner's claim against the State, including the underlying facts. AS 09.19.010(b)(1). The prisoner must also provide the court with a certified copy of the prisoner's prison account statement for the preceding six months. AS 09.19.010(b)(2). The court has the authority to require the prisoner to provide additional documentation or financial information. AS 09.19.010(b)(3).

Based on this information, "the court may grant an exemption from part of the applicable filing fees if the court finds that exceptional circumstances prevent the prisoner from paying full filing fees". AS 09.19.010(c). The statute does not define "exceptional circumstances" except by exclusion: "Imprisonment and indigency do not constitute exceptional circumstances if the prisoner has available income or resources that can be applied to the filing fee." *Id.*

If the court finds exceptional circumstances, the court can exempt the prisoner from paying the normal fee, but the court

must require the prisoner to pay at least a minimum partial fee. This minimum fee is set at twenty percent of (1) the monthly average of the deposits made to the prisoner's account, or (2) the average monthly balance of that account, whichever is larger. AS 09.19.010(d). (Of course, if this calculation yields a figure greater than the normal filing fee, the prisoner need pay only the normal fee. *Id.*)

After the court determines the amount of the filing fee that the prisoner must pay, the prisoner must normally pay this fee within 30 days or the prisoner's pleadings will not be accepted for filing. AS 09.19.010(e). However, the court has the authority to extend this 30-day deadline. *Id.*

### Procedural Due Process

George asserts that AS 09.19.010 is too vague to satisfy the demands of due process. He points out that the statute authorizes courts to waive the normal filing fee if a prisoner proves "exceptional circumstances", but the statute then fails to define "exceptional circumstances" (except to declare that imprisonment and indigency do not, by themselves, constitute exceptional circumstances). George contends that, without firm criteria for defining exceptional circumstances, "[u]neven application [of the statute] is a virtual certainty".

Reading AS 09.19.010 as a whole, it is obvious that the phrase "exceptional circumstances" refers to the circumstances other than imprisonment and indigency that "prevent the prisoner from paying full filing fees". AS 09.19.010(c). Under AS 09.19.010(b), a prisoner seeking exemption from the normal filing fee must provide the court with "the prisoner's complete financial situation, including the prisoner's income, assets, and court-ordered payments", as well as a description of "the circumstances that pre-

---

1. For purposes of AS 09.19.010, "litigation against the State" is defined as "a civil action or an appeal from a civil action or the final decision of an administrative agency that ... [relates] to a person's status or treatment as a prisoner or to a criminal charge against or involving the person". *See* AS 09.19.100(1). Petitions for post-conviction relief are civil actions. *Hensel v. State,* 604

P.2d 222, 230–31 (Alaska 1979). Thus, AS 09.19.010 governs filing fees when a prisoner seeks post-conviction relief under AS 12.72, *see* Alaska Criminal Rule 35.1(e)(1), or when a prisoner appeals the denial of post-conviction relief. However, AS 09.19.010 does not govern the filing fees a prisoner must pay to pursue a direct appeal of his or her conviction.

vent the prisoner from paying full filing fees". AS 09.19.010(b)(1).

At first blush, it may seem strange for the legislature to declare that a prisoner's "indigency" does not constitute a sufficient reason to waive the normal filing fee. However, the definitions of "indigency" contained in the Alaska statutes and court rules focus on a person's ability to hire private counsel.[2] Many people with regular incomes will be found "indigent" under these definitions, even though they could afford to pay a $100 filing fee if that were the only expense of litigation. We conclude that the legislature used the phrase "exceptional circumstances" in AS 09.19.010 to clarify that, for the purpose of granting filing fee exemptions, the focus of the inquiry should be on the person's ability to pay the filing fee, not their ability to pay for private counsel.

George correctly notes that the statute does not prescribe a precise standard of how penniless a prisoner must be before a court should waive the normal filing fee. Because of this lack, George contends that "judges are free to decide, without any legally fixed standards, whether an exemption is warranted". We do not agree.

The question to be decided is whether the prisoner, given his or her income, assets, and liabilities, can afford to pay the normal filing fee. This question will ultimately turn on the financial situation of the individual prisoner. In this respect, the filing fee determination is similar to the determination of eligibility for

appointed counsel under AS 18.85.120(b) and AS 18.85.170(4). The same flexible approach is required: a court must examine a person's expenses, determine which ones are necessary, then compare those necessary expenses to the person's income and accumulated assets. Just as AS 18.85.170(4) defines "indigency" without specifying dollar amounts and without providing specific guidelines for income or expenses, we believe that the concept of "exceptional circumstances" can pass constitutional muster without these specifics.

George contends that AS 09.19.010 contains another procedural flaw; he asserts that the statute makes no provision for a prisoner to be heard on the question of the fee exemption, or for the prisoner to dispute an adverse ruling of the court. George gleans this interpretation from the fact that AS 09.19.010(b) requires the prisoner to file a written application for fee exemption, and from the wording of AS 09.19.010(e), which appears to envision that the court will issue its decision in writing.

 The fact that the legislature has apparently required the prisoner's pleadings and the court's decision to be in writing does not mean that the legislature has prohibited the judge from holding hearings to aid in adjudicating the issue of fee exemption. For example, AS 18.85.120(b) requires a defendant who seeks appointed counsel to describe his or her financial condition "in writing or by other record", and the statute contains no

---

**2.** The Alaska statutes contain only one definition of "indigency". That definition is found in AS 18.85.120(b) and AS 18.85.170(4), the provisions of law which define a person's eligibility for court-appointed counsel from the Public Defender Agency. Under this definition, a person is "indigent" if the person "does not have sufficient assets, credit, or other means to provide for payment of an attorney and all other necessary expenses of [legal] representation without depriving [the person] or [their] dependents of food, clothing, or shelter". AS 18.85.170(4).

The Alaska court rules likewise contain only one definition of "indigency". That definition is found in Administrative Rule 12(c)(2), the rule that defines a person's eligibility for appointment of counsel from the Office of Public Advocacy for purposes other than acting as defense counsel in criminal cases. Under this definition, the main criterion of indigency is income level: a person is "indigent" if the person's income "does not

exceed the maximum annual income level established to determine eligibility for representation by the Alaska Legal Services Corporation". Administrative Rule 12(c) gives a court the authority to declare a person "indigent" even when their income exceeds the maximum amount for legal services representation. In making a special determination of indigency, the judge must take into account:

the funds necessary for the person to maintain employment, to provide shelter, and to clothe, feed and care for the person and the person's immediate family, the person's outstanding contractual indebtedness, the person's ability to afford representation based on the particular matter and the complexity of the case, the costs of living and attorneys fees in different regions of the state, and any liquid assets which could be counted as income.

That is, the judge's main focus is whether the person can afford to hire a lawyer.

specific provision for an in-court hearing to debate the defendant's eligibility for appointed counsel. Yet, to this court's knowledge, AS 18.85.120 has never been construed to forbid such a hearing. We likewise see nothing in AS 09.19.010 that forbids the superior court from holding a hearing to investigate a prisoner's eligibility for exemption from the normal filing fee.[3]

■ Next, George contends that AS 09.19.010 is unconstitutional because it requires prisoners to demonstrate the merit of their claim against the State before the superior court is authorized to exempt them from the normal filing fee. It is true that, when a prisoner files for exemption from the normal filing fee, AS 09.19.010(b)(1)(C) requires the prisoner to include a statement describing "the nature of the action or appeal and specific facts that would, if proven, state a claim on which relief can be granted or [that would] entitle the prisoner to reversal on appeal". However, the court's decision whether to exempt the prisoner from the normal filing fee does not turn on or involve this information.

AS 09.19.010(c) directs the court to decide whether "exceptional circumstances prevent the prisoner from paying full filing fees". This paragraph of the statute does not suggest that the filing fee decision involves the merits of the prisoner's underlying cause of action against the State. Instead, subsection (c) speaks only of the financial aspects of the prisoner's situation: the court is to determine "if the prisoner has available income or resources that can be applied to the filing fee".

We agree with George that, if AS 09.19.010 conditioned a filing fee exemption on the superior court's evaluation of the probable merits of the prisoner's contemplated lawsuit, the statute would potentially pose serious constitutional difficulties. *Compare*

*Donnelly v. State*, 516 P.2d 396, 399 (Alaska 1973) (holding that a person seeking post-conviction relief is entitled to the assistance of an attorney before responding to a motion for judgement on the pleadings); *Douglas v. California*, 372 U.S. 353, 357, 83 S.Ct. 814, 816, 9 L.Ed.2d 811 (1963) (striking down California's procedure of appointing appellate counsel for indigent defendants only after the appellate court independently examined the record and concluded that it would be helpful to the defendant or to the appellate court to have counsel appointed). However, we do not construe AS 09.19.010 to require prisoners to demonstrate the probable merit of their lawsuits. Similarly, we do not believe that the statute authorizes the superior court to deny a fee exemption on the basis that the prisoner's lawsuit, as preliminarily described, appears to lack merit.

For these reasons, we reject George's various due process attacks on the procedures established in AS 09.19.010. We now turn to George's second main attack on the statute—his claim that it unconstitutionally discriminates against indigents who are prison inmates.

### Equal Protection

As noted above, Alaska courts have traditionally been authorized to waive filing fees for all indigent litigants. Since the enactment of AS 09.19.010, indigent litigants have been divided into three groups for purposes of assessing filing fees.

The first group is composed of indigents who are not pursuing "litigation against the state" as defined in AS 09.19.100(1). For these litigants who are suing someone other than the State, or who are suing the State about something unrelated to a criminal charge or their status or treatment as a prisoner, the law relating to filing-fee waivers remains unchanged. A court may waive

---

3. Regarding potential appellate review of the superior court's decision, we note that the Alaska Supreme Court has held that "[a]ny alleged violation of fundamental constitutional rights must be afforded judicial review", even when there is no specific statutory provision authorizing review. *Owen v. Matsumoto*, 859 P.2d 1308, 1310 (Alaska 1993) (recognizing inmates' right to judicial review of Department of Corrections' administrative decisions affecting fundamental constitutional rights). *See also Brandon v. Department of Corrections*, 938 P.2d 1029, 1031–32 (Alaska 1997). If a prisoner ever claims that the superior court has abused its fee-setting discretion under AS 09.19.010 so as to effectively deny the indigent prisoner his or her day in court, we do not doubt our authority to review the superior court's decision.

the filing fee in its entirety, regardless of whether the litigant is a prisoner.

The second group is composed of indigents who wish to pursue "litigation against the state" but who are not prisoners. For indigent non-prisoners, the law relating to filing-fee waivers again remains unchanged; that is, a court may waive the fee in its entirety.

The third group is composed of indigent prisoners who wish to pursue "litigation against the state". For these litigants, AS 09.19.010 limits a court's ability to grant an exemption from filing fees.

George does not challenge the legislature's distinction between persons pursuing litigation against the state and persons pursuing other litigation. However, George challenges the distinction between indigent non-prisoners and indigent prisoners.

■■■ When adjudicating an equal protection claim under Article I, Section 1 of the Alaska Constitution, the basic question is whether similarly situated people are being treated the same. Often (as in this case), it is clear that the legislature is treating one group of people differently from another, and the court's real task is to see whether there is in fact a relevant difference between the two groups. If there is a relevant difference, then the court's next task is to examine how the legislature's classification hurts the disadvantaged group of people, and then to judge the significance of this legislated disadvantage. If the legislature's action adversely affects important individual rights, then the legislature's goal must be correspondingly important, and the classification drawn by the statute must be closely tailored to achieving that goal. Conversely, if the legislation affects only lesser rights or interests, then the legislation can rest on a lesser goal, and the means chosen to achieve that goal can be less precise. *Alaska Pacific Assurance Co. v. Brown*, 687 P.2d 264, 269–270 (Alaska 1984).

George contends that there is no good reason for the legislature's decision to divide indigent people into two groups, treating prisoners differently from non-prisoners. To evaluate this claim, we first must examine what the legislature was trying to accomplish when it enacted AS 09.19.

AS 09.19 was included as part of 1995 House Bill 201, a legislative proposal that was initiated by the governor under Article III, Section 18 of the Alaska Constitution. The governor's transmittal letter that accompanied HB 201 contains an explanation of the filing fee provisions:

> I am transmitting a bill that addresses many of the problems arising from prisoner litigation, sentence appeals, and frivolous or extremely tardy post-conviction relief motions. This bill is intended to ensure that offenders [desist from] endless "recreational" litigation.
>
> ... Frivolous litigation filed by prisoners misallocates resources of the judiciary, the Department of Law, the Public Defender's Office, the Office of Public Advocacy, the Department of Corrections, and the public.

1995 House Journal 488–89.

One could hardly dispute the propriety of the legislature's interest in limiting or discouraging frivolous lawsuits. The real question is whether it is fair to single out prisoners as a significant source of frivolous litigation.

■■ One of the axioms of economic theory is that people are generally more likely to purchase goods and services, or to purchase more of them, as the price of those goods or services goes down. *World Book Encyclopedia* (1985), "Supply and Demand" (author: Robert Dorfman), Vol. 18, p. 796. As many experienced lawyers might attest, this rule applies to lawsuits. Although some people can afford to litigate endlessly, and other people are by temperament inclined to litigate regardless of expense, most people will consider the cost of litigation (in terms of both their money and their time) when deciding whether to initiate or continue a lawsuit. In effect, the cost of litigation acts as a mechanism to screen out meritless lawsuits: people must weigh this cost against the importance of the dispute and the likelihood of success in court.

When the price of litigation goes up, this increased cost will ordinarily deter people

from filing lawsuits over matters of lesser importance and from pursuing lawsuits that have small chance of success. Thus, the expense of litigation actually benefits society—up to a point. The darker aspect of litigation expense is that, as litigation costs go higher, more and more people with meritorious claims are effectively denied redress in the legal system because they can not afford to litigate. Because access to the legal system is so important in our society, both federal and state governments have enacted measures to make sure that indigent people are able to litigate at a reduced cost. See, for instance, Alaska Administrative Rules 9(f) and 10 and the federal *in forma pauperis* statute, 28 U.S.C. § 1915.

Allowing people to litigate at reduced cost obviously increases the risk that people will litigate with less reason. However, until recently, the federal and state legislatures viewed this trade-off as beneficial on the whole. This view has now changed, at least with regard to prisoners, because of the large impact that prisoners' lawsuits are having on the courts.

■ The Alaska Legislature is not alone in deciding to increase litigation costs for prisoners. In 1996, Congress enacted the Prison Litigation Reform Act, 110 Statutes 1321, §§ 801–810. As described by the Fourth Circuit in *Roller v. Gunn*, 107 F.3d 227 (4th Cir.1997), the federal Prison Litigation Reform Act was enacted to deal with a flood of civil litigation initiated by federal prisoners who were exempt from filing fees under 28 U.S.C. § 1915, the federal *in forma pauperis* statute:

> The first federal *in forma pauperis* ("IFP") statute was enacted in 1892.... Congress proposed to "open the United States courts to ... American citizens [who hitherto have been] excluded ... for want of sufficient money or property[.]" H.R.Rep. No. 1709, 52nd Congress, 1st Sess. 1 (1892). [However,] the statute's noble purpose has been threatened by a flood of meritless lawsuits.
>
> Unsurprisingly, prisoners proved responsible for much of this litigation.... In 1995, prisoners brought over 25% of the civil cases filed in the federal district

courts. [*See*] Administrative Office of the United States Courts, 1995 Federal Court Management Statistics 167. In this circuit alone, IFP filings accounted for almost half of the court's 1995 caseload, *Nasim v. Warden, Maryland House of Correction*, 64 F.3d 951, 954 n. 2 (4th Cir.1995) (en banc), and prisoners were responsible for 75% of those filings. *Id.* at 953–54 n. 1.

*Roller*, 107 F.3d at 230.

Congress was concerned that the effectiveness of the federal judiciary was being compromised by a flood of prisoner litigation. Congress also concluded that this proliferation of prisoner lawsuits was due, in significant part, to the fact that it was easy and essentially costless for prisoners to pursue meritless claims. For these reasons, Congress enacted the Prison Litigation Reform Act, which comprised a series of amendments to the *in forma pauperis* statute, 28 U.S.C. § 1915. *Roller*, 107 F.3d at 230–31.

Like AS 09.19.010, the federal Prison Litigation Reform Act applies to prisoners who file civil suits or appeals. The Act requires the prisoner to supply the court with financial information and a certified copy of their prison account. 28 U.S.C. § 1915(a)(1)-(2). The Act also specifies that a prisoner must pay an initial filing fee equal to 20 percent of the average monthly deposits to the prisoner's account or the average monthly balance of the account over the previous six months, whichever is greater. 28 U.S.C. § 1915(b)(1)-(2). However, unlike the Alaska statute, which authorizes a court to waive the rest of the filing fee, the federal Act requires prisoners to make continuing monthly payments equal to 20 percent of their monthly income (each time their account balance exceeds $10) until the entire normal filing fee is paid. *Id.*

According to the Congressional debate, the goal of the Act was to

> require prisoners to pay a very small share of the large burden they place on the Federal judicial system by paying a small filing fee upon commencement of lawsuits. In doing so, the [new Act] will deter frivolous inmate lawsuits. The modest monetary outlay will force prisoners to think

twice about the case and not just file reflexively. Prisoners will have to make the same decision that [other] Americans must make: Is the lawsuit worth the price?

Statement of Senator Kyl, reported in 141 Congressional Record at S7526 (quoted in *Roller,* 107 F.3d at 231).

The statistics quoted by the Fourth Circuit in *Roller* may explain the legislative desire to limit prisoner lawsuits, but these statistics alone do not fully answer George's equal protection attack on AS 09.19.010. In particular, why did the Alaska Legislature decide to establish a mandatory minimum filing fee for indigent prisoners who wish to sue the government over matters related to their "treatment as a prisoner" or related to "a criminal charge against [them]", but not establish a minimum fee for indigent former prisoners who, despite their release, wish to pursue the same types of claims?

It might seem to make little difference whether an indigent litigant is still serving a prison sentence or, instead, has been released from prison (on bail pending appeal, on probation, or on parole) at the time the lawsuit is filed. However, the circumstances of an indigent prisoner are different from the circumstances of an indigent non-prisoner.

As discussed above, the statutory definition of "indigent" in AS 18.85.170(4) focuses on a person's ability to hire a private attorney, pay the various associated costs of litigation, and still meet the basic needs of themselves and their dependents. This statutory definition of "indigent" obviously embraces a great many people who hold jobs, who take care of dependents, and who must spend many hours each week performing the other tasks required to maintain a household. For indigent non-prisoners, the litigation process itself will almost certainly represent a significant intrusion on the person's life. Apart from out-of-pocket expense, the litigation will generally require the person to spend hours away from their job, from their family, and from chores, errands, and social recreation. All of these potential costs, monetary and temporal, will normally influence an indigent non-prisoner's decision to initiate litigation against the government.

For an indigent who is imprisoned, however, litigation offers a different prospect:

Prisoners ... have their basic material needs provided at state expense. They are further provided with free paper, postage, and legal assistance. They often have free time on their hands that other litigants do not possess. *See Lumbert [v. Illinois Dept. of Corrections,* 827 F.2d 257,] 259 [ (7th Cir.1987) ]. As a result, the federal courts have observed that prisoner litigation has assumed something of the nature of a "recreational activity." *See, e.g., Gabel v. Lynaugh,* 835 F.2d 124, 125 n. 1 (5th Cir.1988). Whether recreational or not, there has been a far greater opportunity for abuse of the federal judicial system in the prison setting. *See* 141 Cong. Rec. S7256 (May 25, 1995) (statement of Sen. Kyl) (noting that over one-fourth of civil cases filed in federal district courts were filed by prisoners, and that the vast majority of these cases ended in no relief for the prisoner).

*Roller v. Gunn,* 107 F.3d at 234.

Among indigents, prisoners often have the least income and the fewest assets; that is, they often have less at stake if they litigate and lose. Moreover, prisoners generally have the most free time to give over to litigation. For non-prisoners, time devoted to litigation must often be taken from the hours otherwise needed for employment, household, and recreation. For prisoners, on the other hand, the federal filing statistics suggest that litigation often constitutes a diversion from the monotony of prison life.

Given the differing circumstances of indigent non-prisoners and indigent prisoners, federal courts have unanimously concluded that the filing fee requirements placed on prisoners by the Prison Litigation Reform Act do not violate the equal protection clause. As the Fourth Circuit observed:

There is nothing unreasonable in requiring a prisoner ... to make some contribution, however minimal, to ask him ... to "put his money where his mouth is," it being all too easy [for prisoners] to file suits ... if it costs nothing whatever to do so. Such a requirement ... simply forc[es] the prisoner to confront the initial dilemma which

faces most other potential civil litigants: is the merit of the claim worth the cost of pursuing it?

*Evans v. Croom*, 650 F.2d 521, 524 (4th Cir.1981) (footnote and citations omitted) (*quoted in Hampton v. Hobbs*, 106 F.3d 1281, 1285–86 (6th Cir.1997)). *Accord, Nicholas v. Tucker*, 114 F.3d 17 (2nd Cir.1997); *Mitchell v. Farcass*, 112 F.3d 1483 (11th Cir.1997); *Roller v. Gunn*, 107 F.3d at 233–34.

We agree with the reasoning of these federal decisions, and we therefore conclude that the Alaska Legislature had a reasoned basis for distinguishing between indigent prisoners and indigent non-prisoners when assessing filing fees in "litigation against the state" as defined in AS 09.19.100(1).[4] Our next task, under Alaska's equal protection test, is to determine how the legislature's action has hurt the interests of indigent prisoners.

George argues that AS 09.19.010 abridges one of a prisoner's most fundamental rights—the right to seek justice in the courts when the prisoner has been convicted unfairly. George contends that, because AS 09.19.010 applies to petitions for post-conviction relief and to appeals from the denial of post-conviction relief, the statute must be deemed to place a financial burden on an indigent prisoner's right of appeal. George bases his argument on the assertion that a post-conviction relief proceeding is really an extension of the original criminal proceeding, "a criminal action relating directly to the validity of a criminal conviction".

George is mistaken in his attempt to equate post-conviction relief proceedings with direct appeals. As Alaska Criminal Rule 35.1(b) declares, a petition for post-conviction relief "is not a substitute for[,] nor does it affect[,] any remedy incident to the proceedings in the trial court, or ... direct review of the sentence or conviction." That is, a petition for post-conviction relief is not the equivalent of an appeal. Rather, a petition for post-conviction relief is "a collateral attack on a final judgment [that] must be presumed valid"; it is a civil action that is

"separate from the original criminal proceeding", *Hensel v. State*, 604 P.2d 222, 230 (Alaska 1979), and it is not intended "to take the place of a direct appeal." *Higgins v. Briggs*, 876 P.2d 539, 543 (Alaska App.1994).

As we have already noted (see footnote 1), AS 09.19.010 does not burden a criminal defendant's right of appeal; the statutory definition of "litigation against the State" does not include direct appeals of criminal convictions. Even after the passage of this statute, an indigent prisoner may still seek and obtain a total waiver of the filing fee for a direct appeal of a criminal conviction (or sentence).

However, it is hardly necessary for George to prove that petitions for post-conviction relief are equivalent to direct appeals of criminal convictions. The right to seek post-conviction relief is important enough by itself. If AS 09.19.010 had the effect of denying indigent prisoners the ability to seek post-conviction relief, the legislature would have a very difficult time justifying its action. The question, then, is whether the minimum filing fee established by AS 09.19.010 effectively denies indigent prisoners access to the courts to pursue post-conviction relief?

We conclude that the answer is no. For a truly penniless prisoner—one who has no income and no balance in their prison account—the minimum filing fee set by AS 09.19.010 is zero. For prisoners like George, with an average monthly income of approximately $10.00 a month and with account balances of under $10.00, the statutory minimum fee is quite modest. As previously mentioned, the minimum fee for George himself is $2.21.

George points out, with some justice, that a prisoner of limited means might attach great importance to a sum this small. He cites federal cases that have struck down fee structures that effectively required prisoners to give up their last dollar, to "totally deprive themselves of [the] small amenities of life". *Bullock v. Suomela*, 710 F.2d 102, 103 (3rd

---

4. We thus reject George's claim that the legislature acted arbitrarily, in violation of the due process clause of the Alaska Constitution (Article I, Section 7), when it established a minimum filing fee for prisoners.

Cir.1983). *See also In re Epps,* 888 F.2d 964, 967 (2nd Cir.1989).

We do not believe, however, that AS 09.19.010 is such a draconian measure. For example, George's average monthly income is about $11.00. Paying a one-time filing fee of $2.21 may require him to re-budget, but it will not totally deprive him of the amenities of prison life. We note that, if George could show that paying this fee in one lump sum would cause hardship, the statute gives the court the authority to extend the deadline for payment.

We acknowledge that, under certain circumstances, the minimum fee established by AS 09.19.010 may hypothetically equal or exceed a prisoner's total resources. For example, a prisoner with a meager monthly income might, through frugality, accumulate a sizeable balance in their prison account, only to be forced to spend the entire balance because of an emergency. For the next several months, the minimum filing fee set by AS 09.19.010 might be beyond the prisoner's means—because the 6–month average balance of the now-depleted account would still far exceed the prisoner's small monthly income. Alternatively, a prisoner might have a relatively high monthly income but be required to spend all of it each month to satisfy a child-support obligation—effectively leaving the prisoner with no disposable income.

The federal Prison Litigation Reform Act has an explicit "safety-valve" clause to handle these contingencies—an explicit provision that prisoners will still be able to litigate despite their inability to make the minimum filing fee payments set by the federal statute.[5] AS 09.19.010 does not contain a similar provision. Thus, cases may potentially arise under the Alaska statute in which prisoners are required to pay minimum fees that are completely beyond their reach. If such cases are presented to us, we will then have occasion to consider whether the operation of the statute is limited by constitutional considerations. However, the facts of George's case do not present this problem.

For these reasons, we reject George's assertion that AS 09.19.010 denies indigent prisoners their right of access to the courts. The statute may require prisoners to make unwanted or unpleasant decisions about how they will allocate their resources. But the statute does not require prisoners to pay money they do not have; instead, it asks prisoners to set spending priorities.[6] As the Fourth Circuit observed,

> Requiring prisoners to make economic decisions about filing lawsuits does not deny access to the courts; it merely places the indigent prisoner in a position similar to that faced by those whose basic costs of living are not paid by the state. Those living outside of prisons cannot file a lawsuit every time they suffer a real or imagined slight. Instead, they must weigh the importance of redress before resorting to the legal system. If a prisoner determines that his funds are better spent on other items rather than filing a civil rights lawsuit, "he has demonstrated an implied evaluation of that suit"[.]

*Roller v. Gunn,* 107 F.3d at 233 (quoting *Lumbert v. Illinois Dep't of Corrections,* 827 F.2d 257, 260 (7th Cir.1987)).

We thus reject George's contention that AS 09.19.010 abridges indigent prisoners' right of access to the courts. The statute does restrict an indigent prisoner's ability to file a lawsuit at no personal cost, but indigent prisoners do not have a legally protected right to sue the government at no cost. Under these circumstances, AS 09.19.010 passes the equal protection test so long as the legislature had a rational basis for drawing a distinction between indigent prisoners and indigent non-prisoners. We have already concluded that the legislature had a valid reason to draw this distinction. We there-

---

**5.** "In no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee." 28 U.S.C. § 1915(b)(4).

**6.** In fact, Alaska's statute (which requires payment of a reduced filing fee) is significantly more favorable to indigent prisoners than its federal counterpart, the Prison Litigation Reform Act, which allows federal prisoners to begin litigating upon payment of a reduced fee but then obliges them to continue paying (as funds permit) until the entire normal filing fee is paid.

fore uphold AS 09.19.010 against George's equal protection challenge.

### Conclusion

We conclude that AS 09.19.010, as construed in this opinion, is constitutional. Therefore, within the next 30 days, George must either pay the normal $100 filing fee prescribed in Administrative Rule 9(a)(1) or, alternatively, apply to the Clerk of the Appellate Courts under AS 09.19.010 and pay whatever reduced filing fee is established under that statute. If George fails to comply, we will grant the State's pending motion to dismiss this appeal.