Richard BRANDON, Appellant,

v.

CORRECTIONS CORPORATION OF AMERICA, dba Central Arizona Detention Center, Michael Samberg, Chief Operating Officer; and the State of Alaska, Department of Corrections, Margaret Pugh, Commissioner, Appellee.

No. S–9228.

Supreme Court of Alaska.

July 27, 2001.

Richard Brandon, pro se, Seward.

Timothy W. Terrell, Assistant Attorney General, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellees.

Before FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

### OPINION

CARPENETI, Justice.

## I. INTRODUCTION

When Richard Brandon, a prisoner in the Alaska corrections system, commenced litigation against the State of Alaska in a civil action, he also filed a Prisoner Request for Filing Fee Exemption under AS 09.19.010 and a motion to waive the filing fee based on a constitutional challenge to the statute. The first superior court judge assigned to the case ordered Brandon to pay reduced filing fees and granted his motion for an extension of time, but did not mention his request for an outright exemption from paying the filing fees. Another judge later dismissed the case for failure to pay the reduced filing fees within the extension allowed by the first judge and denied Brandon's motion for an outright exemption as impliedly denied by the first judge's decision to reduce the fees.

Brandon argues three issues on appeal: (1) the superior court erred in dismissing the case before the time he had been allowed to pay the fee had expired; (2) the superior court improperly denied his motion to waive the filing fee in its entirety; and (3) the prisoner filing fee statute, AS 09.19.010, is unconstitutional. The state concedes error as to the first issue but disputes Brandon's positions with regard to the other two. We agree with the state as to all three issues. Accordingly, we reverse the dismissal of this case and remand with instructions that Brandon be given an opportunity to pay the filing fee ordered by the superior court.

## II. FACTS AND PROCEEDINGS

Richard Brandon is a State of Alaska prisoner who was housed at the Central Arizona Detention Center (CADC) from January 1995 until February 1998 pursuant to a contract CADC had with the State of Alaska Department of Corrections. Brandon filed suit against CADC, its parent corporation, Corrections Corporation of America, and the State of Alaska Department of Corrections for surcharges applied to his commissary purchases, allegedly in violation of the *Cleary v. Smith*[1] Final Settlement Agreement. Section V.J.2 of the Settlement Agreement provides that surcharges on commissary purchases are prohibited. However, Brandon's underlying claims as to prohibited surcharges are not at issue here. This appeal concerns the dismissal of his complaint for failure to pay filing fees.

Brandon submitted his complaint on July 15, 1998. At the same time, he submitted a Prisoner Request for Filing Fee Exemption, and a motion to waive the filing fee. The motion to waive the filing fee raised a constitutional challenge to the prisoner filing fee exemption set forth in AS 09.19.010.[2]

---

1. No. 3AN–81–5274 Ci. (Alaska Super., September 21, 1990).

2. AS 09.19.010 provides that

 (a) A prisoner may not commence litigation against the state unless the prisoner has paid full filing fees to the court or is a claimant under AS 23.20, except that the court may exempt a prisoner from paying part of those fees if the court finds exceptional circumstances as described in this section.

 (b) To apply for a filing fee exemption, a prisoner shall submit to the court

 (1) an affidavit that clearly discloses that the person is a prisoner and that sets out

 (A) the prisoner's complete financial situation, including the prisoner's income, money in financial accounts, assets, and court-ordered payments;

 (B) the circumstances that prevent the prisoner from paying full filing fees; and

 (C) the nature of the action or appeal and specific facts that would, if proven, state a claim on which relief can be granted or entitle the prisoner to reversal on appeal;

On July 28, 1998 Superior Court Judge Brian C. Shortell granted Brandon's request for filing fee exemption. Based on the financial information submitted by Brandon, the superior court ordered him to pay a reduced filing fee in the amount of $66.29. Judge Shortell allowed Brandon until August 28, 1998 to pay the fee. No ruling was made on the motion to waive the filing fee.

On August 19 Brandon wrote a letter to the judge, asking the court to consider the letter as a motion for extension of time to pay the reduced filing fee. Brandon asked for a sixty to ninety day extension. He submitted a proposed order with this motion, which would have extended the filing fee deadline sixty days. The proposed order was not used. Instead, Judge Shortell turned Brandon's letter/motion into an order, writing on the letter:

*Order*

So Ordered.

9/8/98

/s/ B. Shortell

Thus, the previously extended deadline for payment of the filing fees was extended by sixty to ninety additional days, or until between November 9[3] and December 7, 1998.

On November 9, 1998 Superior Court Judge Michael L. Wolverton[4] dismissed Brandon's case, without prejudice, for lack of payment of the filing fee. Brandon moved to reinstate the action on December 1. He argued that he should have been given notice and an opportunity to pay the filing fee. He also pointed out that his motion to waive the filing fee was still pending. On December 28 Judge Wolverton vacated the November 9 order, concluding that it had been entered prematurely based on Judge Shortell's order allowing Brandon sixty to ninety days to pay the fee. Judge Wolverton concluded that Brandon had actually had until December 8 to pay. However, Judge Wolverton went on to conclude that because no filing fee had been paid as of December 28, the case still had to be dismissed, without prejudice, for lack of payment of the filing fee.

On January 2, 1999 Brandon filed another letter/motion in which he asked Judge Wolverton to clarify his rulings. Brandon pointed out that the effect of the December 28 order "was less than fair" because, while it noted that the November order had been prematurely entered, the December order did not give Brandon a chance to pay the fee. Brandon also noted that his motion to waive the filing fee had never been ruled on.

In response to Brandon's questions regarding the status of his motion to waive the filing fee, Judge Wolverton issued an order on January 13 in which he concluded that Judge Shortell's ruling on the reduced filing

---

(2) a certified copy of the prisoner's account statement from the correctional facility in which the prisoner is being or has been held for the six-month period preceding the submission of the application; and

(3) other documentation or financial information as the court may require.

(c) Based on the submission under (b) of this section, the court may grant an exemption from part of the applicable filing fees if the court finds that exceptional circumstances prevent the prisoner from paying full filing fees. Imprisonment and indigency do not constitute exceptional circumstances if the prisoner has available income or resources that can be applied to the filing fee.

(d) If the court orders an exemption under (c) of this section, the court shall determine the amount of the exemption and set a filing fee to be paid by the prisoner. In setting the fee, the court, at a minimum, shall require the prisoner to pay filing fees equal to 20 percent of the larger of the average monthly deposits made to the prisoner's account described in (b)(2) of this section, or the average balance in that account, not to exceed the amount of the full filing fee required under applicable court rules.

(e) The court shall mail or otherwise serve its order under (d) of this section on the prisoner. Along with its order, the court shall give written notice that the case or appeal will not be accepted for filing if payment of a filing fee is not made within 30 days after the date of distribution of the order, unless the time for payment is extended by the court. If timely payment is not made, the court may not accept any filing in the case or appeal. If payment is made, the prisoner's filing and supporting documents shall be accepted for filing with the court.

3. Sixty days after September 8 is November 7. Because November 7, 1998 was a Saturday, a sixty-day extension would have created a due date of November 9.

4. The case was reassigned to Judge Wolverton in October.

fee was effectively a denial of Brandon's motion to waive the filing fee.

Brandon appeals the dismissal of his case for failure to pay the filing fee on three grounds: (1) that the superior court erred by dismissing his case for failure to pay the filing fee; (2) that the superior court improperly denied his motion to waive the filing fee in its entirety; and (3) that the prisoner filing fee statute is unconstitutional.

## III. STANDARD OF REVIEW

"When interpreting the Civil Rules we exercise our independent judgment, adopting the rule of law that is most persuasive in light of reason, precedent, and policy. Similarly, we review constitutional questions *de novo*." [5]

## IV. DISCUSSION

A. *Prisoners Are Required To Pay a Filing Fee When Commencing Litigation Against the State of Alaska.*

Commencing a civil action requires the filing of a complaint with the court.[6] A fee schedule for filing has been established for the Alaska Court System.[7] Payment of the filing fee is required before any civil action or proceeding is accepted for filing.[8] However, a filing fee is not required of "any person determined to be indigent under Administrative Rule 10."[9] In order to avoid payment of a filing fee based on a determination of indigency, the person requesting an exemption must file an indigency statement on a court form.[10] But the indigency exemption is not applicable where the person is a prisoner commencing litigation against the State of Alaska.[11]

A prisoner may not commence litigation against the state[12] unless he or she "has paid full filing fees to the court . . . except that the court may exempt a prisoner from paying part of those fees if the court finds exceptional circumstances."[13] A prisoner seeking the filing fee exemption must submit documents to the court regarding his or her financial situation.[14] Based on that information, the court determines whether the requisite exceptional circumstances exist that prevent the prisoner from paying full filing fees.[15]

If a prisoner has income or other resources available that can be applied to the filing fee, then "imprisonment and indigency do not constitute exceptional circumstances."[16] The court sets the amount of the exemption based on the average balance of the prisoner's correctional facility account.[17] Indeed, even though the prefatory language to the statute speaks of the court's power only to "exempt a prisoner from paying *part* of [the] fees,"[18] the statute actually allows exemption from paying any fee if the prisoner's account is small enough.[19] The court order setting out the filing fee must provide

---

5. *Peter v. Progressive Corp.*, 986 P.2d 865, 867 (Alaska 1999) (footnotes omitted).

6. *See* Alaska R. Civ. P. 3(a).

7. *See* Alaska R. Admin. P. 9.

8. *See* Alaska R. Admin. P. 9(f)(3).

9. Alaska R. Admin. P. 9(f)(1).

10. *See* Alaska R. Admin. P. 10(b).

11. *See* Alaska R. Admin. P. 10(e).

12. AS 09.19.100 defines "Litigation against the state" as:
 (1) . . . a civil action or an appeal from a civil action or from the final decision of an administrative agency, a petition for review, a petition for hearing, an original application for relief, or another action filed under the Alaska Rules of Appellate Procedure that
 . . . .

(B) is related to a person's status or treatment as a prisoner . . ., or to an alleged violation of the person's constitutional rights.

13. AS 09.19.010(a).

14. *See* AS 09.19.010(b).

15. *See* AS 09.19.010(c).

16. *Id.*

17. *See* AS 09.19.010(d).

18. *See* AS 09.19.010(a) (emphasis added).

19. *See* AS 09.19.010(d) (prisoner must pay twenty percent of the greater of average monthly deposits or average balance in prisoner's account for the previous six months). Accordingly, a prisoner with zero balances (or balances less than five cents) is not required to pay any fee.

notice that the action will not be accepted for filing if the filing fee is not paid within thirty days, or the time set by the court.[20] The prisoner's filing and supporting documents may not be accepted by the court until the fee is paid.[21]

As a prisoner commencing civil litigation against the State of Alaska, Brandon was required to follow the statutory provisions for filing fees for prisoner litigation against the state.

### B. *The Superior Court Erred When It Dismissed Brandon's Case for Failure to Pay the Filing Fee.*

■ As previously noted, Brandon's motion for an extension of time to pay the filing fee was turned into an order by Judge Shortell. That order was ambiguous because it did not set a specific date by which the filing fee was to be paid. Instead, the order incorporated Brandon's request that he be given an additional sixty to ninety days to pay. This order effectively allowed Brandon a ninety-day extension of time, resulting in a due date for the filing fee of December 7, 1998.

The state concedes that it was error for the superior court to dismiss Brandon's case on November 9 because dismissal was premature. We agree.

On December 28, 1998 Judge Wolverton properly vacated the November 9 order as premature. However, he concluded that Brandon's case should still be dismissed because he had not paid the filing fee by the end of December. This was error. After the entry of the dismissal order on November 9, there was no reason to expect Brandon to pay the filing fee for a dismissed case, even though he filed a motion to reinstate the action. After the court vacated the November 9 order, it should have given Brandon a new due date for the filing fee.

### C. *Judge Shortell Implicitly Ruled on Brandon's Motion to Waive the Filing Fee.*

■ In response to the December 28 order, Brandon inquired about the status of his motion to waive the filing fee. Judge Wolverton then issued an order in which he concluded that Judge Shortell's order requiring Brandon to pay a reduced filing fee was "a denial of plaintiff's motion for a waiver of the filing fee in its entirety."

This court has concluded in other cases that a ruling on one motion is an implicit denial of another contradictory pending motion.[22] In this case, both of Brandon's motions addressed the filing fee requirement. Judge Shortell's ruling to reduce the filing fee was therefore effectively a denial of Brandon's motion to waive the filing fee. Accordingly, Judge Wolverton was correct in ruling that Judge Shortell had effectively denied Brandon's motion for a waiver of the entire filing fee.

### D. *Brandon Has Not Shown that the Prisoner Filing Fee Statute Is Unconstitutional.*

Brandon argues that the provisions for prisoner exemption from filing fees in AS 09.19.010 are unconstitutional because the statute violates Alaska's Equal Protection clause,[23] article I, section 11 of the Alaska Constitution,[24] and "the analogous provisions

20. AS 09.19.010(e).

21. *Id.*

22. *See, e.g., Parson v. Marathon Oil Co.*, 960 P.2d 615, 618 (Alaska 1998) (concluding that grant of summary judgment implicitly denied motion to compel depositions and to reschedule briefing); *LeDoux v. Kodiak Island Borough*, 827 P.2d 1121, 1123 (Alaska 1992) (concluding that trial court implicitly denied LeDouxs' motion to stay by granting Borough's summary judgment motion).

23. Alaska Constitution article I, section 1 provides:

This constitution is dedicated to the principle that all persons have a natural right to life, liberty, the pursuit of happiness, and the enjoyment of the rewards of their own industry; that all persons are equal and entitled to equal rights, opportunities, and protection under the law; and that all persons have corresponding obligations to the people and to the State.

24. Alaska Constitution article I, section 11 provides in part:

In all criminal prosecutions, the accused shall have the right to a speedy and public trial.... The accused is entitled to be informed of the nature and cause of the accusation ...

of the Constitution of the United States." He does not contend that he lacks the resources to pay the reduced filing fee.

The state contends that AS 09.19.010 was enacted as part of a nationwide trend regarding partial filing fees for prisoners. The state argues that the legislative goal of deterring frivolous prisoner litigation is legitimate, that this court's holding in *Mathis v. Sauser*[25] does not serve to invalidate the prisoner filing fee statute, and that there is no equal protection violation.

When a constitutional challenge to a statute is raised, the party bringing the challenge must demonstrate the constitutional violation; constitutionality is presumed, and doubts are resolved in favor of constitutionality.[26] The party attacking a statute must show there is no constitutional basis to support it.[27] This court presumes that the legislature sought to act within constitutional limits.[28]

For the reasons discussed below, we conclude that Brandon has not met his burden to show that the statute is unconstitutional.

### 1. AS 09.19.010 does not violate equal protection.

Brandon argues that: (1) the prisoner filing fee exemption statute singles out prisoners for different treatment for filing fees, (2) the holding of *Mathis* requires the conclusion that AS 09.19.010 is unconstitutional, (3) the statute was enacted with an unconstitutional motivation, and (4) the statute creates state

immunity because prisoners are entitled only to as much justice as they can afford. We disagree on all points.

#### a. Indigent prisoners and indigent non-prisoners are not similarly situated.

"Amendment XIV, section 1 of the United States Constitution and Article I, section 1 of the Alaska Constitution guarantee ... equal protection under the law. These clauses, however, require equal treatment only for those who are similarly situated."[29] The state argues that Brandon's claim that the prisoner filing fee statute singles out prisoners for different treatment is without merit because indigent prisoners and indigent non-prisoners are not similarly situated.

As the court of appeals noted in *George v. State*, "the circumstances of an indigent prisoner are different from the circumstances of an indigent non-prisoner."[30] Indigent prisoners do not have to pay rent, buy groceries, or hold down a job; and their basic needs are met by the state.[31] A prisoner filing a civil action against the state need not worry that payment of the filing fee means that the rent will not be paid or that groceries cannot be purchased. In *Tucker v. Branker*, the District of Columbia Circuit Court noted that the prison system is "constitutionally bound to provide ... its prisoner ... with the necessities of life" and then held that because the prisoner is "not forced to choose between the necessities of life and his lawsuit ... the [prisoner] filing-fee provision ... does not

and to have the assistance of counsel for his defense.

25. 942 P.2d 1117 (Alaska 1997).

26. *See Baxley v. State*, 958 P.2d 422, 428 (Alaska 1998).

27. *See Katmailand, Inc. v. Lake and Peninsula Borough*, 904 P.2d 397, 401 (Alaska 1995) (quoting *Regan v. Taxation with Representation of Washington*, 461 U.S. 540, 547–48, 103 S.Ct. 1997, 76 L.Ed.2d 129 (1983)).

28. *See Kimoktoak v. State*, 584 P.2d 25, 31 (Alaska 1978); *see also State v. Rice*, 626 P.2d 104, 108 (Alaska 1981).

29. *Rutter v. State*, 963 P.2d 1007, 1013 (Alaska 1998) (internal quotation marks and citations omitted); *see also City of Cleburne v. Cleburne*

*Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985).

30. *George v. State*, 944 P.2d 1181, 1188 (Alaska App.1997).

31. *See id.* (quoting *Roller v. Gunn*, 107 F.3d 227, 234 (4th Cir.1997) ("Prisoners ... have their basic material needs provided at state expense.... They often have free time on their hands that other litigants do not possess. As a result, the federal courts have observed that prisoner litigation has assumed something of the nature of a 'recreational activity.' Whether recreational or not, there has been a far greater opportunity for abuse of the federal judicial system in the prison setting.") (internal citations omitted)).

unconstitutionally impinge upon his right of access to the courts."[32] We agree with this rationale. The choices of an indigent non-prisoner are between filing suit against the state and being able to meet basic necessities of life. The choice an indigent prisoner faces is between filing suit against the state or engaging in other activities; basic life necessities are not jeopardized by that choice. Thus, because indigent prisoners are not similarly situated to indigent non-prisoners, Brandon's equal protection challenge fails.

### b. *Mathis does not mandate the conclusion that AS 09.19.010 is unconstitutional.*

In *Mathis v. Sauser*, we considered the claim of an inmate that in denying a prisoner the right to possess a computer printer, the Department of Corrections violated due process, violated equal protection, and denied access to the courts.[33] We reversed a grant of summary judgment against the inmate, stating that if "a challenged regulation curtails an inmate's right of access [to the courts], a reviewing court must determine that the given policy rationale is legitimate and that there is a sufficiently close relationship between this articulated rationale and the selected means of achieving it."[34] We ruled that summary judgment was inappropriate because an impermissible motive on the part of those enacting a regulation would render the regulation improper, and the prison administration's decision, that a restriction on printer access was needed to curtail frivolous prisoner litigation, raised a genuine issue of material fact.[35]

Less than two months after the *Mathis* decision, the Alaska Court of Appeals decided *George v. State*, in which it specifically addressed the constitutionality of the statute at issue in this case, AS 09.19.010.[36] In *George*, an inmate challenged the constitutionality of the filing fee provisions, arguing that he should be able to proceed under the filing fee provisions for indigent persons.[37] The court of appeals concluded that the statute was not unconstitutionally vague because it provided a flexible approach similar to that found in the statutes concerning eligibility for appointed counsel.[38] The *George* court also concluded that the statute did not violate equal protection because indigent prisoners pursuing litigation against the state are not similarly situated with indigent non-prisoners pursuing litigation against the state.[39]

In this case, Brandon argues that our decision in *Mathis v. Sauser* compels us to overrule the court of appeals's conclusion in *George v. State* that AS 09.19.010 is constitutional. Brandon contends that the statute is unconstitutional because its enactment involved an impermissible motivation. The state contends that Brandon misconstrues *Mathis* as concluding that only the courts can "concern themselves with the problem of frivolous or unmeritorious litigation." The state points out that it is constitutionally permissible for the legislature to amend court rules, provided it is done by a two-thirds vote.[40] The state argues that this court's holding in *Mathis* should not be applicable to legislative branch actions.

We agree with the state that *Mathis* does not require the conclusion that AS 09.19.010 is unconstitutional and that *George* must be overruled. In *Mathis*, prison officials implemented a challenged policy; here, a legislative enactment is in question. Our jurispru-

---

32. 142 F.3d 1294, 1298 (D.C.Cir.1998).

33. *Mathis*, 942 P.2d at 1119–20.

34. *Id.* at 1121–22.

35. *See id.* at 1122–23.

36. *George*, 944 P.2d at 1182.

37. *Id.*

38. *See id.* at 1184.

39. *Id.* at 1189.

40. Brandon does not contest the validity of AS 09.19.010 as a court rule. We note that AS 09.19.010 was properly enacted by more than the constitutionally required two-thirds vote of the members elected to each house. *See* Alaska Const. art. IV, § 15; *see also* Ch. 79, § 1, SLA 1995; 1995 House Journal 1703 (passed: Yeas 39, Nays 0, Absent 1); 1995 Senate Journal 1815 (passed: Yeas 19, Nays 1); Ch. 95, § 1 SLA 1998; 1998 House Journal 3523 (amendment passed unanimously); 1998 Senate Journal 3939 (amendment passed unanimously).

dence makes clear that we give substantial deference to legislative enactments in determining constitutionality.[41] In *Mathis,* the lower court granted summary judgment to the state even though a genuine issue of material fact was in dispute; here, the issue is one of pure law. *Mathis* by no means governs the outcome in this case.

c. *AS 09.19.010 was not enacted for an unconstitutional purpose.*

 Brandon claims that the publicly stated purpose of AS 09.19.010 (to reduce frivolous litigation by prisoners against the state) both singles out prisoners for different treatment and is based on improper motivation that renders the statute unconstitutional under *Mathis* because it impermissibly restricts access to the courts. We disagree. As the Ninth Circuit Court of Appeals stated in *Rodriguez v. Cook,* equal protection under the Fifth and Fourteenth Amendments of the federal constitution "is not a source of substantive rights or liberties, but rather a right to be free from invidious discrimination in statutory classifications and other governmental activity."[42] The purpose behind the prisoner filing fee statute does not constitute invidious discrimination, nor does the statute unconstitutionally restrict access to the courts.

Where a claimant challenges the constitutionality of a provision that allegedly impairs a prisoner's access to the court, the analysis is "conceptually similar ... to constitutional challenges in the equal protection and due process contexts."[43] The level of scrutiny applied under the federal test depends on whether the legislation in question "discriminates against a suspect class or infringes upon a fundamental right."[44] Federal courts reviewing prisoner filing fee requirements have applied rational basis review.[45]

 Unlike the federal equal protection analysis, we apply "a sliding scale, invoking closer scrutiny for more important interests."[46] Under the sliding scale approach, "[t]he applicable standard of review for a given case is to be determined by the importance of the individual rights asserted and by the degree of suspicion with which we view the resulting classification scheme."[47] Where access to the courts is at issue, we apply a more heightened review than rational basis: the more onerous the burden on access, the higher the scrutiny.[48] Here, because the burden on access is not overly onerous, we apply an intermediate level of review.

 "An inmate's right to be free of state interference with his right of access to the court system is not absolute."[49] As long as a statute does not impermissibly interfere with, or burden, an inmate's right of access to the court and is sufficiently related to a legitimate government interest, it is constitutional.[50]

 Brandon supports his claim of impermissible motive—denying access to the courts—with the court of appeals's discussion of the legislative history and intent in *George v. State.* He contends that the following statement in the governor's transmittal letter

---

41. *See supra* notes 27–28.

42. 169 F.3d 1176, 1179 (9th Cir.1999) (quoting *Harris v. McRae,* 448 U.S. 297, 322, 100 S.Ct. 2671, 65 L.Ed.2d 784 (1980)) (holding that state prison rule limiting amount of free postage available to prisoners did not violate equal protection rights because it was rationally related to a legitimate government purpose).

43. *Mathis,* 942 P.2d at 1121 n. 8.

44. *Rodriguez,* 169 F.3d at 1179 (citing *Nordlinger v. Hahn,* 505 U.S. 1, 10, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992)).

45. *See, e.g., Tucker v. Branker,* 142 F.3d 1294, 1300 (D.C.Cir.1998); *Rodriguez,* 169 F.3d at

1180; *Roller v. Gunn,* 107 F.3d 227, 233 (4th Cir.1997).

46. *Schikora v. State, Dep't. of Revenue,* 7 P.3d 938, 944 (Alaska 2000).

47. *State, Dep't of Revenue, Permanent Fund Dividend Div. v. Cosio,* 858 P.2d 621, 629 (Alaska 1993) (quoting *State v. Ostrosky,* 667 P.2d 1184, 1192–93 (Alaska 1983)).

48. *See Mathis,* 942 P.2d at 1121.

49. *Id.*

50. *See id.* at 1121–22.

(regarding the bill that ultimately became AS 09.19), as quoted in *George*, is a "publicly stated purpose" that indicates an intent to "curtail access to the courts."

> This bill is intended to ensure that offenders [desist from] endless "recreational" litigation. . . .
>
> . . . Frivolous litigation filed by prisoners misallocates resources of the judiciary, the Department of Law, the Public Defender's Office, the Office of Public Advocacy, the Department of Corrections, and the public.[51]

Brandon then interprets *Mathis* as requiring close scrutiny of the rationale behind the legislation to ensure that the rationale and stated purpose are not subterfuge for an impermissible motive. But he does not claim that subterfuge exists in this case; rather, he concludes that the governor's transmittal letter quoted in *George* is itself a publicly stated unconstitutional purpose.

However, Brandon does not quote all of the relevant language from the governor's transmittal letter:

> I am transmitting a bill that addresses many of the problems arising from prisoner litigation, sentence appeals, and frivolous or extremely tardy post-conviction relief motions. This bill is intended to ensure that offenders *focus their attention on their rehabilitation and reformation,* rather than on endless "recreational" litigation.
>
> The bill is also intended to promote the finality of convictions, preserve the sanctity of jury verdicts, minimize the litigation of stale claims, and prevent the unjustified dismissal of a criminal case when reprosecution is not possible. Frivolous litigation filed by prisoners misallocates resources of the judiciary, the Department of Law, the Public Defender's Office, the Office of Public Advocacy, the Department of Corrections, and the public. [Section 1] . . . relate[s] to prisoner litigation. [The section is] designed to reduce the number of frivo-

lous suits filed by prisoners that involve the state, its employees, and former employees. This prisoner litigation is preventing the state and the court from giving adequate attention to legitimate lawsuits. Sections 1, 15, and 17 of the bill require prisoners to pay filing fees for civil proceedings *according to their ability to pay.*[52]

The governor's letter does not indicate an impermissible intent to curtail prisoner access to the court. The stated purpose is legitimate: reducing frivolous prisoner litigation, and requiring prisoners who file civil actions against the state to pay filing fees according to their ability to pay.

We have stated that "even when state officials deem a prisoner's pro se legal activities frivolous, the Constitution of Alaska precludes any action aimed at impeding an inmate's access to the courts."[53] However, the legislation in question here does not impede access to the courts—it requires that the inmate pay some part of the administrative cost incurred in some civil suits against the state, based on the prisoner's ability to pay, in order to reduce unnecessary burdens on the courts and public resources. Extensions of time may be granted in order to give a prisoner the opportunity to pay. And if the prisoner's account balance is low enough, he or she may be required to pay very little, or nothing. This approach accounts for the cost to the judicial system, and to the public, for prisoner civil litigation against the state without imposing an undue burden on prisoners.

Furthermore, the justifications for the fee survive close scrutiny for legitimacy. The discussion in *George* regarding the background of prisoner filing fees is useful here. Congress enacted the Prisoner Litigation Reform Act (PLRA) because it concluded that "the effectiveness of the federal judiciary was being compromised by a flood of prisoner litigation" because it was "easy and essentially costless for prisoners to pursue meritless

---

**51.** *George*, 944 P.2d at 1186 (quoting 1995 House Journal 488–89).

**52.** 1995 House Journal 488–89 (emphasis added).

**53.** *Mathis,* 942 P.2d at 1122.

claims."[54] Congress wanted to "require prisoners to pay a very small share of the large burden they place on the Federal judicial system."[55] The provisions of AS 09.19.010 require the prisoner contemplating certain forms of litigation against the state to consider whether it is worth the cost, just as other litigants must. But as the *George* court noted, the statute "does not require prisoners to pay money they do not have; instead it asks prisoners to set spending priorities."[56] More importantly, as the state has pointed out, the filing fee statute in question is not applicable to criminal cases or direct appeals from criminal cases, nor does it apply to litigation that is not against the state.[57] And Alaska's prisoner filing fee provisions are far more advantageous to Alaska prisoners than the comparable federal requirement that the full filing fee be paid, in installments if necessary.[58] We conclude that the sliding scale fee payment system implemented by AS 09.19.010 does not impede prisoner access to the courts.

■■ "The Supreme Court has never recognized an 'unlimited rule that an indigent at all times and in all cases has the right to relief without the payment of fees.' "[59] In this case, Brandon does not argue that his access to the court has in fact been impeded because he is indigent or can not pay the filing fee. He merely argues that prisoners should not be treated differently. But the reasoning of the Fourth Circuit is persuasive:

Requiring prisoners to make economic decisions about filing lawsuits does not deny access to the courts; it merely places the

indigent prisoner in a position similar to that faced by those whose basic costs of living are not paid by the state. Those living outside of prisons cannot file a lawsuit every time they suffer a real or imagined slight. Instead, they must weigh the importance of redress before resorting to the legal system. If a prisoner determines that his funds are better spent on other items rather than filing a civil rights suit, "he has demonstrated an implied evaluation of that suit" that the courts should be entitled to honor.[60]

It is true that there is more contact between the state and its prisoners and thus more likelihood of colorable claims against the state, than between other citizens and the state, but prisoners are assured that basic necessities will be provided, which are not provided to non-prisoners filing suit against the state. We conclude that Brandon has not shown that the filing fee provisions of AS 09.19.010 are onerous or overly burdensome.[61] They are sufficiently related to a legitimate government objective and do not impinge on a fundamental right, discriminate against a suspect class, or restrict access to the courts.

d. *The prisoner filing fee statute does not create state immunity.*

■■ Brandon claims that the statute creates state immunity against prisoner litigation. This claim is without merit. The prisoner filing fee provisions do not prevent prisoners from filing civil actions against the state. Prisoners are only required to pay a portion of the costs imposed on the court by

**54.** *George*, 944 P.2d at 1187 (citing *Roller*, 107 F.3d at 230–31).

**55.** *Id.* (quoting 141 Cong. Rec. at S7526 (May 25, 1995) (statement of Senator Kyl), quoted in *Roller*, 107 F.3d at 231).

**56.** *Id.* at 1190.

**57.** *See* AS 09.19.010.100.

**58.** *See* 28 U.S.C. § 1915(b)(1), (2) (2000). We note that no federal court addressing the constitutionality of the prisoner filing fee provisions has found this statute to be unconstitutional. *See Rodriguez v. Cook*, 169 F.3d 1176, 1179–81 (9th Cir.1999) (discussing opinions of various circuit courts).

**59.** *Roller*, 107 F.3d at 231 (quoting *United States v. Kras*, 409 U.S. 434, 450, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973)).

**60.** *Id.* at 233 (citation omitted).

**61.** Brandon's claim regarding the onerous nature of the paperwork that must be filled out is without merit. Anyone seeking relief from the filing fee requirement is required to submit information to support the reasons they seek to avoid paying full filing fees. *See* Alaska R. Admin. P. 9(b), 10. And in the case of prisoner litigation, the prison officials complete some of the paperwork. *See* AS 09.19.010(b)(2).

the filing of a lawsuit, based on the average balance of their prisoner account.[62] As noted above, it could be that the fee is zero. The court of appeals stated in *George*, "federal courts have unanimously concluded that the filing fee requirements placed on prisoners ... do not violate equal protection.... 'There is nothing unreasonable in requiring a prisoner ... to make some contribution, however minimal.' "[63] That conclusion makes sense. Requiring a filing fee payment based on ability to pay for specific kinds of civil litigation against the state does not unconstitutionally restrict access to the courts or create a state immunity; it requires that prisoners assess the claims they seek to litigate and pay fees according to their ability.

2. *Brandon has waived his argument that AS 09.19.010 violates Alaska Constitution article I, section 11.*

▇▇▇▇ Brandon briefly claims in a footnote that the prisoner filing fee statute violates article I, sections 1 and 11 of the Alaska Constitution. He did not raise this claim to the court below. A party may not raise an issue for the first time on appeal.[64] And cursory treatment of an issue is considered by this court to be waiver of that issue.[65] This claim is thus waived. And as the state contends, the argument is meritless because this section of the Alaska Constitution deals with the rights of the accused in a criminal prosecution and is thus not applicable to this case.

V. CONCLUSION

Brandon has not shown that the prisoner filing fee provisions of AS 09.19.010 for civil actions against the state are unconstitutional. However, because the superior court erred by dismissing Brandon's claim without giving him an opportunity to pay the reduced filing fee set by Judge Shortell, this matter is REMANDED with instructions to reinstate the claim and allow Brandon the opportunity to pay the filing fee.

---

**62.** See AS 09.19.010.

**63.** *George*, 944 P.2d at 1189 (quoting *Evans v. Croom*, 650 F.2d 521, 524 (4th Cir.1981) (footnotes and citations omitted)); *see also Roller*, 107 F.3d at 233–34.

**64.** *See Preblich v. Zorea*, 996 P.2d 730, 736 n. 17 (Alaska 2000) (quoting *Padgett v. Theus*, 484 P.2d 697, 700 (Alaska 1971) ("Ordinarily an issue which was not raised in the trial court will not be treated on appeal.")).

**65.** *See Wall v. Stinson*, 983 P.2d 736, 739–40 n. 8 (Alaska 1999).