**Sidney R. HERTZ, Appellant,**

v.

**Dan CAROTHERS; Garland Armstrong; Cindy Betts; Rebecca Bingham, MD; and State of Alaska, Department of Corrections, Appellees.**

No. S–12364.

Supreme Court of Alaska.

Jan. 11, 2008.

---

Sidney R. Hertz, pro se, Seward.

Marilyn J. Kamm, Assistant Attorney General, and Talis J. Colberg, Attorney General, Juneau, for Appellees.

Before: FABE, Chief Justice, MATTHEWS and EASTAUGH Justices.

## OPINION

EASTAUGH, Justice.

## I. INTRODUCTION

After State of Alaska prisoner Sidney Hertz lost his civil rights lawsuit against the state and several of its employees, the superior court awarded attorney's fees of $3,225 against Hertz. When the state began executing on Hertz's prisoner trust account, Hertz claimed exemptions under AS 09.38.030, arguing that his income fell below the statutory level and, in the alternative, that the statute is invalid. The superior court, relying on AS 09.38.030's express exception for prisoners, denied his exemption claim. We affirm. The prisoner exception in AS 09.38.030(f) is valid and the superior court

did not abuse its discretion in holding that this exception applied to Hertz.

## II. FACTS AND PROCEEDINGS

In July 2004 Sidney Hertz, an inmate at the Lemon Creek Correctional Center, sued the Alaska Department of Corrections (DOC) and several of its employees for alleged civil rights violations. The superior court ruled for the defendants, awarded the state Alaska Civil Rule 82 prevailing party attorney's fees of $3,225, and entered judgment against Hertz for the amount of the award, plus post-judgment interest. After the state obtained a writ of execution, executed against Hertz's DOC prisoner trust account, and recovered $914.32 per AS 09.38.030(f)(5), Hertz filed an exemption claim, arguing that AS 09.38.030(f)(5) did not apply to him. The superior court denied Hertz's exemption claim. It ruled that AS 09.38.030(f)(5) permitted the state to levy on Hertz's account to recover the award.

In July 2006 Hertz filed this appeal to challenge the denial of his claimed exemption. In August the state obtained a second writ of execution and again executed against Hertz's account, this time for $541.07. Hertz filed a second exemption claim, which the superior court also denied. Hertz then moved to amend his points on appeal to add claims that (1) the superior court lacked jurisdiction to entertain the second writ of execution, (2) Assistant Attorney General Marilyn Kamm should be sanctioned for misconduct, and (3) AS 09.38.030(f)(5) is unconstitutional. We granted his motion to amend.

## III. DISCUSSION

### A. Standards of Review

 We review a grant of attorney's fees for abuse of discretion.[1] The interpretation of a statute and determination of its constitutionality present legal questions we review de novo.[2] Decisions whether to sanc-

tion attorneys are reviewed for abuse of discretion.[3]

### B. The Superior Court Did Not Err in Denying Hertz's Request for an Exemption from Execution on the Award of Attorney's Fees.

 Hertz argues that AS 09.38.030(a) and (b) exempt him from paying attorney's fees because of his low income. Even though AS 09.38.030(f) contains an express exception denying exemptions to prisoners, Hertz asserts that the exception is invalid. The exception is contained in AS 09.38.030(f)(5):

> (f) The state may execute on a judgment awarded to the state or on a judgment of restitution on behalf of a victim of a crime or a delinquent act, and an officer or agent of the state or a state employee, or a former officer, agent, or employee of the state may execute on a judgment to that person against a party to an action who is incarcerated for a criminal conviction by sending a notice of levy to the correctional facility in which the person is incarcerated. All money in an incarcerated person's account at a correctional facility is available for disbursement under a notice of levy under this subsection, in the following order of priority:
>
> . . . .
>
> (5) to satisfy other judgments entered against a prisoner in litigation against the state; in this paragraph, "litigation against the state" has the meaning given in AS 09.19.100.

According to Hertz, repealed statutes AS 33.32.050 and .060 conflict with the inmate exception in AS 09.38.030(f)(5) and therefore invalidate it. Hertz contends that he is entitled to rely on these repealed statutes because his rights had vested when he brought suit, and under AS 01.10.100(a) the repeal of a statute does not extinguish any rights already accrued under the repealed statute.

---

**1.** *Marsingill v. O'Malley*, 128 P.3d 151, 156 (Alaska 2006).

**2.** *C.J. v. State, Dep't of Corr.*, 151 P.3d 373, 377 (Alaska 2006).

**3.** *In re Schmidt*, 114 P.3d 816, 819 (Alaska 2005).

### 1. Exemption under AS 09.38.030(a), (b)

Hertz argues that AS 09.38.030(a) exempts him from paying attorney's fees because his income is below that required for exemption from civil debt, and that AS 09.38.030(b) applies because he is paid once a month.

Alaska Statute 09.38.030(a) provides that "[e]xcept as provided in (b), (c), (f), and (h) of this section ... an individual debtor is entitled to an exemption of the individual debtor's weekly net earnings not to exceed $350." Hertz argues that because he earns approximately $263 per month, this exemption applies, and he cannot be made to pay the attorney's fees award.

Alaska Statute 09.38.030(b) provides that "[a]n individual who does not receive earnings either weekly, semi-monthly, or monthly is entitled to a maximum exemption for the aggregate value of cash and other liquid assets available in any month of $1,400, except as provided in (f) ... of this section...." Hertz argues that this subsection applies to him because he is paid once a month.

Both arguments fail. Alaska Statute 09.38.030(a) and (b) both except persons who are covered by AS 09.38.030(f).[4] Alaska Statute 09.38.030(f) provides that "[t]he state may execute on a judgment awarded to the state ... against a party to an action who is incarcerated for a criminal conviction ... to satisfy other judgments entered against a prisoner in litigation against the state." Alaska Statute 09.38.030(f) also provides that "[a]ll money in an incarcerated person's account at a correctional facility is available for disbursement ... under this subsection...." Hertz is an incarcerated person who lost his lawsuit against state defendants, the DOC and several DOC employees. He is therefore within subsection (f) and is consequently excepted from the exemptions otherwise provided by AS 09.38.030(a) and (b).[5]

### 2. Applicability of repealed statutes AS 33.32.050 and .060

Hertz also argues that the exception in subsection .030(f) for an incarcerated person is invalid.

He first contends that repealed statutes AS 33.32.050 and .060 conflict with AS 09.38.030(f), rendering it ambiguous and invalid. He argues that even though AS 33.32.050 and .060 [6] have been repealed, he has not lost his rights under them because AS 01.10.100(a) provides that the repeal of a statute does not release or extinguish any rights accruing or accrued under that law. The superior court found that Hertz had filed his suit before the sunset provision for AS 33.32 took effect and therefore retained his rights under the statute.

We do not need to decide here whether Hertz's rights had vested under AS 33.32.050 and .060. For our purposes AS 33.30.201 as it now reads is nearly identical to repealed statutes AS 33.32.050 and .060. Hertz's rights in this case are the same, whether they are determined under the current statutes or the repealed statutes.

### 3. Alaska Statute 09.38.030(f)(5) and repealed statutes AS 33.32.050 and .060

■ Even if we assume that the repealed statutes do apply, we are unpersuaded by Hertz's contention that repealed statute AS 33.32.050(c) conflicts with AS 09.38.030(f)(5). Hertz reasons that because AS 33.32.050(c) did not expressly provide for disbursement of prisoner funds to satisfy a judgment for the state, it conflicts with AS 09.38.030(f)(5), which does expressly provide for such disbursements. Apparently he believes that because there is overlap between the two stat-

---

**4.** AS 09.38.030(a) ("Except as provided in ... (f) ... of this section ...."); (b) ("[E]xcept as provided in ... (f) ... of this section....").

**5.** AS 09.38.030(b) would not apply in any event. It applies to "[a]n individual who does not receive earnings ... monthly," and Hertz himself states that he is paid once a month.

**6.** AS 33.32.050 and .060 provided a system of payment for prisoners working in correctional industries. By statute enacted in 1997, sections .050 and .060 were prospectively repealed effective July 1, 2005. Ch. 49, § 14, SLA 1997. In 2006 the legislature incorporated portions of former AS 33.32.050 and .060 into an existing statute, AS 33.30.201. Ch. 58, §§ 6, 7, SLA 2006.

utes in some areas,[7] the absence in AS 33.32.050 of a provision allowing for payment of judgments to the state means that AS 09.38.030(f)'s inclusion of such a provision is ambiguous and conflicting. But as the superior court's order explains, the statutes provide a list of priorities for disbursement of prisoner wages and are not conflicting.

Alaska Statute 33.32.050, repealed effective July 2005,[8] provided for the establishment of a pay plan for prisoners working in correctional industries and created a tiered system for disbursing the money. The disbursements began with child support payments and included payment of civil judgments related to crime and purchase of personal items such as clothing. Per AS 33.32.050(d), all money remaining after disbursement was to be "retained by the commissioner of corrections for the primary purpose of being available to the prisoner at the time of release." Alaska Statute 33.32.060, also repealed effective July 2005,[9] provided that "[e]xcept for execution by the state under AS 09.38.030(f), only the prisoner payments retained by the commissioner of corrections under AS 33.32.050(d) are subject to lien, attachment, garnishment, execution, or similar procedures to encumber funds or property." Alaska Statute 09.38.030(f) provides for the disbursement of prisoner funds to satisfy a civil judgment in favor of the state. In other words, only money remaining after the enumerated disbursements in AS 33.32.050(c) would be available for satisfaction of other civil judgments, *except* for civil judgments to which the state was a party. In cases in which the state is a party, AS 09.38.030 applies, and pre-disbursement wages become available for satisfaction of a judgment under which the state is a judgment creditor.

The disbursement schemes do not conflict. One set of priorities for disbursing prisoner wages applies when the state has not obtained a money judgment against the prisoner (current AS 33.30.201 and repealed AS 33.32.050 and .060); another set applies when the state obtains a money judgment against

the prisoner (AS 09.38.030(f)). Repealed statute AS 33.32.060 and current statute AS 33.30.201 both specifically refer to AS 09.38.030(f). As the superior court noted, it appears that the legislature intended to make it easier for the state, but not private parties, to collect money judgments from prisoners.

Because repealed statutes AS 33.32.050 and .060 (even if they do apply) do not conflict with AS 09.38.030(f), and because the superior court did not err in allowing execution on Hertz's account under AS 09.38.030(f)(5), it was not error to permit execution to recover on the attorney's fees award.

### 4. Constitutional arguments

Hertz contends that AS 09.38.030(f) is unconstitutional because: (1) it has a chilling effect on his First Amendment rights, and (2) it violates equal protection by treating a group of citizens (prisoners) differently.

██ In referring to First Amendment rights, Hertz appears to be arguing that AS 09.38.030(f) discourages inmate litigation. This is true and is in fact one of the stated purposes of the statute. Both the superior court's order and the state's brief refer to then-Governor Tony Knowles's transmittal letter accompanying House Bill (H.B.) 201, the bill that produced AS 09.38.030(f). In his letter Governor Knowles stated that H.B. 201

> addresses many of the problems arising from prisoner litigation, sentence appeals, and frivolous or extremely tardy post-conviction relief motions. This bill is intended to ensure that offenders focus their attention on their rehabilitation and reformation, rather than on endless "recreational" litigation.
>
> . . . .
>
> Sections 1–5 . . . relate to prisoner litigation. These sections are designed to reduce the number of frivolous suits filed by prisoners that involve the state, its employees, and former employees. This prisoner litigation is preventing the state and

---

7. For example, both statutes allow for disbursement of prisoner wages to support prisoners' dependents. *See* AS 33.32.050(c)(1); AS 09.38.030(f)(1).

8. Ch. 49, § 14, SLA 1997.

9. Ch. 49, § 14, SLA 1997.

the court from giving adequate attention to legitimate lawsuits.[10]

In *Brandon v. Corrections Corp. of America* we held that a related statute, also enacted as part of H.B. 201, that required a prisoner to pay a portion of the filing fee when commencing litigation did not violate the First Amendment or the equal protection clause.[11] We addressed whether Governor Knowles's stated purpose for the enactment of H.B. 201 was unconstitutional and held that it was not.[12] Stating that "[a]n inmate's right to be free of state interference with his right of access to the court system is not absolute," we explained that a statute is constitutional if it "does not impermissibly interfere with, or burden, an inmate's right of access to the court and is sufficiently related to a legitimate government interest." [13] We held that Governor Knowles's "letter does not indicate an impermissible intent to curtail prisoner access to the court. The stated purpose is legitimate: reducing frivolous prisoner litigation, and requiring prisoners who file civil actions against the state to pay filing fees according to their ability to pay." [14] Furthermore, the statute in question there did "not impede access to the courts—it require[d] that the inmate pay some part of the administrative cost incurred in some civil suits against the state, based on the prisoner's ability to pay, in order to reduce unnecessary burdens on the courts and public resources." [15]

In *Brandon* we were addressing the filing fee provision of H.B. 201 codified as AS 09.19.010, not the provision relating to payment of civil judgments at issue here. But the same considerations apply. The filing fee provision and AS 09.38.030(f) were both enacted to discourage frivolous prisoner litigation, and both do so by requiring prisoners to pay a portion of the costs incurred in any litigation they bring.

Hertz's equal protection argument also fails. He argues that AS 09.38.030(f)(5) is unconstitutional because it applies only to a "select group of Alaskan citizens," Alaska prisoners. But in *Brandon* we rejected just such an argument, concluding that indigent prisoners and indigent non-prisoners are not similarly situated.[16] We noted:

> Indigent prisoners do not have to pay rent, buy groceries, or hold down a job; and their basic needs are met by the state. A prisoner filing a civil action against the state need not worry that payment of the filing fee means that the rent will not be paid or that groceries cannot be purchased.[17]

This rationale applies equally to AS 09.38.030(f)(5). We therefore hold that AS 09.38.030(f)(5) does not violate equal protection.

## C. The Superior Court Had Jurisdiction To Issue a Second Writ of Execution After Hertz Commenced this Appeal.

Hertz argues that Alaska Appellate Rule 203 divested the superior court of jurisdiction to issue a second writ of execution while the order issuing the first writ was on appeal. He also contends that a court may issue only one writ of execution per year.

Appellate Rule 203 provides that "[t]he supervision and control of the proceedings on appeal is in the appellate court from the time the notice of appeal is filed with the clerk of the appellate courts, except as otherwise provided in these rules." Appellate Rule 204(d) provides that "[w]henever in a civil case an appellant entitled thereto desires a stay on appeal, the appellant may present to the superior court for its approval a supersedeas bond which shall have such surety or sureties as the court requires." Alaska Civil Rule 62(d) further provides that

---

**10.** 1995 House Journal 488–89.

**11.** *Brandon v. Corr. Corp. of Am.*, 28 P.3d 269, 277 (Alaska 2001).

**12.** *Id.* at 277–79.

**13.** *Id.* at 277 (citation omitted).

**14.** *Id.* at 278.

**15.** *Id.*

**16.** *See id.* at 275–76.

**17.** *Id.* at 275 (citation omitted).

[w]hen an appeal is taken or review sought the appellant or petitioner by giving a supersedeas bond may obtain a stay subject to the exceptions contained in subdivision (a) of this rule. The bond may be given at or after the time of filing the notice of appeal or of filing the petition for review, as the case may be. The stay is effective when the supersedeas bond is approved by the court.

Hertz does not claim that he posted a supersedeas bond, and he did not seek an exemption from Alaska Civil Rule 62(d). Notwithstanding the appeal, absent a stay of execution, the superior court retained jurisdiction to enforce its judgment by issuing writs of execution.

█ Furthermore, his claim that only one writ of execution may be issued per year is incorrect. There is no such limitation. Alaska Civil Rule 69(e) does provide that only one writ of execution and one writ of execution for garnishment of earnings may be outstanding at any one time. Here the superior court issued its first writ on February 1, 2006, and upon execution the DOC paid the first levy on February 7. There was consequently no outstanding writ of execution when the court issued its second writ in August 2006. The superior court therefore was not barred from issuing the second writ.

### E. There Was No Misconduct by the State's Attorney.

Hertz asserts that Assistant Attorney General Marilyn Kamm should be sanctioned $1,000 under Professional Conduct Rule 3.3 for misconduct because he claims that she knew that (1) "A.S. 09.38.030(f)(5) does not apply in this cause of action," and (2) the superior court did not have the authority to execute a second writ of execution.

These claims of attorney misconduct are completely without merit. There is no evidence whatsoever that Kamm acted inappropriately. Her efforts to collect on the judgment were consistent with AS 09.38.030(f)(5). As we have seen, that statute is valid and applicable here. Her efforts to obtain and execute on a second writ were also valid. The superior court therefore appropriately declined to sanction Kamm for attorney misconduct.

## IV. CONCLUSION

We AFFIRM the judgment below.

BRYNER and CARPENETI, Justices, not participating.