Sidney HERTZ, Appellant,

v.

Dan CAROTHERS, Appellee.

No. S–13245.

Supreme Court of Alaska.

Feb. 12, 2010.

Rehearing Denied March 10, 2010.

Sidney R. Hertz, pro se, Seward.

Marilyn J. Kamm, Assistant Attorney General, Richard A. Svobodny, Acting Attorney General, Juneau, for Appellee.

Before: EASTAUGH, WINFREE and CHRISTEN, Justices.

*OPINION*

CHRISTEN, Justice.

## I.  INTRODUCTION

This is the second time we have addressed Sidney Hertz's objections to the State's attempt to execute a judgment against his prisoner trust account.  In *Hertz v. Carothers*[1] (*Hertz I*), Hertz challenged the State's right to execute on his prisoner trust account to satisfy a judgment for Alaska Civil Rule 82 attorney's fees entered after Hertz lost a prisoner civil rights lawsuit against the State. There, we affirmed the validity of AS 09.38.030(f) which excludes prisoners from an exemption for low wage earners.  Following *Hertz I,* the State again levied on Hertz's trust account to satisfy the remainder of its judgment.  Hertz now challenges the levy on the grounds that (1) he was not served properly;  (2) "ambiguities" between AS 09.38.030(f) and AS 33.30.201(d) should be resolved in his favor;  (3) AS 09.38.030(f)(5) is an *ex post facto* law;  and (4) AS 09.38.030(f)(5) violates the contract clauses of the Alaska and United States Constitutions. We reverse the court's ruling that Hertz was properly served but affirm the court's rulings that Hertz's prisoner trust account is subject to execution and that the State's attorney should not be sanctioned.  We also hold that AS 09.38.030(f) is not an *ex post facto* law and that it does not violate the contract clause of the Alaska Constitution or the contract clause of the United States Constitution.

## II.  FACTS AND PROCEEDINGS

Hertz is an inmate at Spring Creek Correctional Center ("SCCC").  In July 2004 he sued the Alaska Department of Corrections

---

1.  174 P.3d 243 (Alaska 2008).

and several of its employees for alleged civil rights violations.[2] The superior court dismissed Hertz's civil rights suit and awarded Rule 82 attorney's fees of $3,225 to the State.[3] The fee award was later reduced to a judgment.[4] When the State attempted to execute against Hertz's prisoner trust account to satisfy the judgment, Hertz claimed exemptions under AS 09.38.030(a) and (b).[5] Specifically, he argued that his wages were exempt from execution because they fell below the statutory minimum in AS 09.38.030.[6] Alternatively, he argued that the statute was invalid under several different theories.[7] In our January 2008 decision, *Hertz I*, we affirmed the superior court's order rejecting Hertz's claims of exemption.[8] We also affirmed the validity of AS 09.38.030(f).[9]

On March 14, 2008, the State again sought to execute against Hertz's prisoner account to satisfy the remaining portion of its judgment. The State's service instructions directed the Alaska State Troopers (Judicial Services) to serve the writ of execution and creditor's affidavit on Superintendent Turnbull at SCCC. The service instruction form contained a separate section entitled "Instructions for Serving Notices on the Debtor," which directed that a copy of the State's creditor's affidavit, notice of levy and sale of property, notice of right to exemptions, claim of exemptions form, and judgment debtor booklet be served on Hertz. On June 12, 2008, a trooper served the writ of execution on Superintendent Turnbull. The trooper did not serve any documents on Hertz.

It is undisputed that Hertz had actual knowledge of the State's attempt to execute against his prisoner trust account by June 17, 2008, when he sent a letter to the superior court challenging the State's "theft" of his money based in part on lack of notice. When the State's counsel realized that Hertz had not been served, she faxed the documents that should have been served on Hertz to SCCC. A prison guard personally delivered them to Hertz on June 19, 2008.

Hertz responded to the faxed documents by filing several claims of exemption in which he argued that (1) improper service voids the levy; (2) "ambiguities" between AS 33.30.201(d)—which provides that the "primary purpose" of the prisoner trust account is to make funds available for prisoners' use at the time of release—and AS 09.38.030(f)(5)—which allows the execution of judgments against prisoner accounts-must be construed against the government; and (3) $185 in his trust account was not subject to execution because he had received it in the form of gifts from family and friends and the money should have been retained by the commissioner pursuant to AS 33.30.201(d).

On August 5, 2008, the superior court denied Hertz's claims of exemption, citing *Hertz I.* The superior court reasoned that our court "has ruled that a prisoner's trust account may be subject to execution," and noted that there is no exception in the statutory scheme for money acquired by gift. Finally, the court rejected Hertz's argument that the errors in the State's service should negate the writ because "there is no prejudice by [the] delayed service and no showing of a knowing violation of the statute." The superior court rejected Hertz's motion for reconsideration.

Hertz appeals.

## III. STANDARDS OF REVIEW

We review issues of statutory interpretation, as well as questions about the constitutionality of statutes, de novo.[10] "Decisions whether to sanction attorneys are re-

---

2. *Id.* at 245.

3. *Id.*

4. *Id.*

5. *Id.*

6. *Id.*

7. *Hertz v. Carothers,* 174 P.3d 243, 245 (Alaska 2008).

8. *Id.*

9. *Id.* at 244.

10. *C.J. v. State, Dep't of Corr.,* 151 P.3d 373, 377 (Alaska 2006) (citing *State v. Alaska Civil Liberties Union,* 978 P.2d 597, 603 (Alaska 1999); *Boone v. Gipson,* 920 P.2d 746, 748 (Alaska 1996)).

viewed for abuse of discretion."[11] "A judge's refusal to recuse him- or herself is reviewed under the abuse of discretion standard."[12]

## IV. DISCUSSION

### A. The Execution on Hertz's Prisoner Trust Account Was Invalid Because the State Failed To Properly Serve Him.

■ The State argues that it was in technical compliance with AS 09.38.085(a)(1) because it served Hertz with a notice of levy, a claim of exemptions form, a creditor's affidavit, and a judgment debtor's handbook. But the State misses the crux of Hertz's argument. Hertz's challenge is not to the sufficiency of the documents served; he challenges the State's method of service.

Several statutes and rules describe the notice the State was required to provide Hertz before levying on his trust account. Alaska Statute 09.38.080(c) requires that "[b]efore, at the time of, or within three days after the levy, the creditor shall serve on the individual [debtor] a notice under AS 09.38.085." Alaska Statute 09.38.085 describes the content of the required notices, and AS 09.38.500, the definitions section of the Alaska Exemptions Act, specifies the method for serving the notices. The term "serve notice" in AS 09.38.080(c) means "to give the person to be served a written personal notice in the same manner a summons in a civil action is served, or to mail the notice to the person's last known address by first-class mail and by using a form of mail requiring a signed receipt."[13] Hertz was served personally, not by mail, so we turn to the civil rules.

Civil Rule 4 identifies the permissible methods for serving a summons in a civil action. It requires service to "be made by a peace officer, by a person specially appointed by the Commissioner of Public Safety for that purpose or, where a rule so provides, by registered or certified mail." The rule defines "peace officer" as "any officer of the state police, members of the police of any incorporated city, village or borough, United States Marshals and their deputies, other officers whose duty it is to enforce and preserve the public peace, and ... persons specially appointed." Special appointments "shall only be made by the Commissioner of Public Safety after a thorough investigation of each applicant."[14]

After the State's counsel learned that the trooper had failed to serve Hertz as instructed, she faxed the documents to SCCC. A prison guard delivered them to Hertz on June 19, 2008. But the State did not argue, and the record does not show, that the prison guard who served Hertz was a "peace officer" or a person "specially appointed to serve process" within the meaning of Civil Rule 4. We agree with the superior court that the delay in service was not prejudicial to Hertz, but the State was still required to use an authorized method of service. The record does not show that the State complied with Civil Rule 4.[15]

We are mindful that our ruling regarding service may appear to elevate form over substance because Hertz had actual knowledge of the levy by June 16, 2008. But we are loathe to carve out exceptions to the important rules for service of process. These rules enable courts to verify that service has actually been made; they are vital to ensuring that litigants receive the due process to which they are entitled, and they are broadly applicable. Creating an exception merely to avoid requiring the State to properly serve Hertz is fraught with precedential danger. Such an exception, though seemingly narrow, could be applied in future cases to relax the notice requirements for litigants

---

**11.** *Hertz,* 174 P.3d at 245 (citing *In re Schmidt,* 114 P.3d 816, 819 (Alaska 2005)).

**12.** *Mustafoski v. State,* 867 P.2d 824, 832 (Alaska App.1994) (citing *Blake v. Gilbert,* 702 P.2d 631, 640 (Alaska 1985); *Perotti v. State,* 806 P.2d 325, 327 (Alaska App.1991)).

**13.** AS 09.38.500(14).

**14.** Alaska R. Civ. P. 4(c)(3).

**15.** The State's reliance on the substantial compliance provision in AS 09.38.085(c) is misplaced. That provision excuses errors in the notices themselves, not errors in the physical delivery of the forms.

who might not have received the actual notice Hertz enjoyed. This danger would be especially acute in cases involving requests for entry of default judgment. Given the serious consequences of execution, i.e., the involuntary confiscation of a debtor's property, we must insist on strict compliance with the legislature's statutory scheme and the service requirements of Civil Rule 4.[16]

### B. Alaska Statutes 33.30.201(d) and 09.38.030(f)(5) Do Not Conflict and Are Not Ambiguous.

■ Alaska Statute 33.30.201(d) provides for prisoners to be compensated for their work in prison and for their wages to be placed in a trust account for the "primary purpose" of being available to them at the time of release. But AS 09.38.030(f) provides that "[a]ll money in an incarcerated person's account at a correctional facility is available for disbursement under a notice of levy under this subsection ... (5) to satisfy other judgments entered against a prisoner in litigation against the state." Hertz argues that the "primary purpose" language of AS 33.30.201(d) conflicts with the disbursement scheme in AS 09.38.030(f). Citing this "ambiguity" Hertz argues that "[a]mbiguities in criminal statutes must be narrowly read and construe[d] strictly against the government."

In *Hertz I*, we upheld the state's ability to execute on prisoner accounts despite an exemption for low-wage earners and those who are paid semi-monthly.[17] We noted that AS 09.38.030(f)(5) specifically eliminates the low-wages exemption when low wages are paid to prisoners.[18]

Hertz's present challenge to AS 09.38.030(f)(5) is technically barred by the doctrine of res judicata;[19] he was required to raise all of his challenges to the statute in *Hertz I*.[20] But Hertz's argument is unavailing even on the merits. Alaska Statute 33.30.201 states that prisoner wages shall be disbursed pursuant to a specified order of priority and that remaining funds are to be given to the prisoner when he or she is released, subject to exceptions. After all disbursements are paid in the statutorily required order of priority, subsection .201(f) states that remaining funds are subject to lien, attachment, garnishment, execution, or similar procedures to encumber money or property. This provision does not conflict with AS 09.38.030(f)(5). Alaska Statutes 33.30.201(c) and (f) identify the priorities for which a prisoner's trust account can be invaded, and AS 09.38.030(f) explains that prisoners do not enjoy the benefit of the exemption for earnings and liquid assets enunciated in AS 09.38.030 generally. Both statutes contemplate and accommodate the execution and garnishment of prisoner trust accounts.

To the extent that Hertz argues that these statutes must be construed against the State because they are "criminal statutes," he is mistaken. The fact that these statutes govern the administration of prisoner trust accounts does not make them "criminal statutes." Hertz has cited no authority and we have found none supporting his assertion that statutes should be strictly construed against the State merely because they apply to convicted felons. Alaska Statutes 09.38.030 and 33.30.201 are civil statutes, they are not ambiguous, and they do not conflict. After all disbursements are made from a prisoner's trust account pursuant to the statute's order of priority, all remaining funds are subject to execution.

---

**16.** *See Beery v. Browning,* 717 P.2d 365, 367 n. 8 (Alaska 1986).

**17.** *Hertz v. Carothers,* 174 P.3d 243, 246 (Alaska 2008).

**18.** *Id.*

**19.** *See Plumber v. Univ. of Alaska Anchorage,* 936 P.2d 163, 166 (Alaska 1997) ("The doctrine of *res judicata* as adopted in Alaska provides that a final judgment in a prior action bars a subsequent action if the prior judgment was (1) a final judgment on the merits, (2) from a court of competent jurisdiction, [and] (3) in a dispute between the same parties ... about the same cause of action.").

**20.** *Calhoun v. Greening,* 636 P.2d 69, 72 (Alaska 1981) ("[A] fundamental tenet of the res judicata doctrine is that it precludes relitigation between the same parties not only of claims that were raised in the initial proceeding, but also of those relevant claims that could have been raised then.").

### C. Alaska Statute 09.38.030(f)(5) Is Not an *Ex Post Facto* Law.

■ Hertz asserts that AS 09.38.030(f)(5) is an *ex post facto* law. The basis for this argument is that this statute was passed in 1995, after the State entered into a consent decree to resolve litigation challenging the conditions of confinement for Alaska prisoners.[21] Hertz argues that the adoption of AS 09.38.030(f)(5) in the wake of the *Cleary* consent decree creates the appearance that AS 09.38.030(f)(5) "was enacted solely for the purpose of circumventing the *Cleary* [Final Settlement Agreement and Order]."

■ We have adopted the United States Supreme Court's view that:

any statute which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission; or which deprives one charged with a crime of any defense available according to law at the time when the act was committed, is prohibited as *ex post facto*.[22]

Alaska Statute 09.38.030(f)(5) does not criminalize behavior that was previously not criminal and it has no bearing on the defense of any crime; it is not an *ex post facto* law.

### D. Alaska Statute 09.38.030(f)(5) Does Not Violate the Contract Clause.

■ Hertz argues that AS 09.38.030(f)(5) violates the contract clause of the United States Constitution and the contract clause of the Alaska Constitution by "substantial[ly] impair[ing]" his contractual right to allege noncompliance with the *Cleary* consent decree. He supports this argument by pointing out that "this Court has admitted that AS 09.38.030(f)(5) was to discourage prisoner litigation." Our court has explained:

Article I, section 15 of the Alaska Constitution provides: "No law impairing the obligation of contracts ... shall be passed." Because the language of the contract clause of the Alaska Constitution is nearly identical to that of the federal Contract Clause, we apply the same two-part analysis to alleged violations of the Alaska and federal contract clauses. We first ask "whether the change in state law has operated as a substantial impairment of a contractual relationship." If there is a substantial impairment, we then examine "whether the impairment is reasonable and necessary to serve an important public purpose."

. . . .

Under the first prong of the contract clause test, we consider: (1) whether there is a contractual relationship, (2) whether the law impairs the contractual relationship, and (3) whether the impairment is substantial.[23]

■ The *Cleary* consent decree sets minimum standards for conditions of prisoner confinement including food, medical care, and dental care. It also provides procedures for prisoners to file grievances for non-compliance with the decree.[24] After exhausting the "administrative grievance procedure," an inmate may file suit in superior court. In this case, the State does not challenge Hertz's assertion that the *Cleary* consent decree established a contractual relationship between the State and inmates in the custody of the State of Alaska,[25] arguing instead that even if such a contractual relationship exists, AS 09.38.030(f) does not impair it. We agree; AS 09.38.030(f) does not impair prisoners' ability to seek enforcement of the *Cleary* consent decree. We do not need to decide

---

**21.** *Cleary v. Smith*, No. 3AN–81–5274 Ci., Final Settlement Agreement and Order (Alaska Super., September 21, 1990).

**22.** *State v. Anthony*, 816 P.2d 1377, 1378 (Alaska 1991) (quoting *Dobbert v. Florida*, 432 U.S. 282, 292, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977)).

**23.** *Hageland Aviation Serv., Inc. v. Harms*, 210 P.3d 444, 451–52 (Alaska 2009) (internal footnotes and citations omitted).

**24.** *Cleary v. Smith*, No. 3AN–81–5274 Ci., Final Settlement Agreement and Order (Alaska Super., September 21, 1990).

**25.** *See Hertz v. State, Dep't of Corr.*, —— P.3d ——, Op. No. 12842 at n. 33, 2010 WL 53112 (Alaska, January 8, 2010) (noting dicta in *Rathke v. Corr. Corp. of Am.*, 153 P.3d 303, 311 (Alaska 2007) that "the FSA 'is an enforceable contract between Alaska inmates and the state.' ")

whether the *Cleary* consent decree constitutes a binding contract.

■ Civil Rule 82 provides for the award of attorney's fees to the prevailing party of a civil lawsuit. Civil Rule 82 was in effect when the *Cleary* consent decree was entered, November 1, 1990. The consent decree addresses certain conditions of confinement; it does not immunize prisoners from attorney's fee awards or exempt inmate trust accounts from execution to satisfy fee awards. Alaska Statute 09.38.030(f)(5) allocates some of the State's cost of defending lawsuits to the non-prevailing prisoner, thereby discouraging frivolous claims.[26] "An inmate's right to be free of state interference with his right of access to the court system is not absolute."[27] A statute is constitutional if it "does not impermissibly interfere with, or burden, an inmate's right of access to the court and is sufficiently related to a legitimate government interest."[28] Alaska Statute 09.38.030(f)(5) does not prevent or stifle a prisoner's ability to pursue legitimate claims against the government.

The specter of Rule 82 fees tempers the litigiousness of most civil litigants; we see no reason to make a special exception for inmates. Alaska Statute 09.38.030(f)(5) merely reflects the State's interest in discouraging frivolous prisoner litigation, a legitimate goal we have repeatedly upheld.[29] We are not convinced that permitting the State to collect judgments from prisoner trust accounts impairs the right of prisoners to seek enforcement of the *Cleary* consent decree,[30] and we hold that AS 09.38.030(f)(5) does not violate the Alaska or federal prohibition against impairment of contracts.

### E. There Was No Misconduct by the State's Attorney.

■ Hertz asserts that the superior court erred by failing to sanction the State's counsel under Professional Conduct Rule 95(b) for (1) failing to have him served by a peace officer; and (2) for lying because she "never intended to serve Hertz with the Writ."

The superior court correctly decided that Hertz's claims of attorney misconduct are meritless. There is no evidence that the State's counsel acted inappropriately during the course of her efforts to collect the State's judgment. At most, there is evidence that a mistake was made at the time of service. Ironically, Hertz's allegation of misconduct arises from counsel's rush to arrange for personal delivery of the documents that would notify Hertz of his right to claim exemptions; the State's attorney likely faxed the documents to SCCC for immediate delivery in order to comply with AS 09.38.080(c), which requires the debtor to receive notice "[b]efore, at the time of, or within three days after the levy."

Even though the State failed to comply with Civil Rule 4, there is no evidence that the State's counsel intended to deprive Hertz of his right to notice. Hertz admits that he received the relevant documents by fax just days after he learned of the levy and apparently shortly after the State's attorney discovered the mistake. The superior court appropriately declined to sanction the State's attorney.

### F. Hertz Waived His Argument that Judge Collins Should Have Recused Herself Because of Apparent Bias Against Prisoners.

■ Hertz argues that the superior court judge created an appearance of impropriety by ruling on his claim of exemptions before receiving his response to the State's objec-

**26.** *Hertz v. Carothers,* 174 P.3d 243, 247 (Alaska 2008).

**27.** *Brandon v. Corr. Corp. of Am.,* 28 P.3d 269, 277 (Alaska 2001) (quoting *Mathis v. Sauser,* 942 P.2d 1117, 1121 (Alaska 1997)).

**28.** *Id.*

**29.** *See Hertz,* 174 P.3d at 248; *Brandon,* 28 P.3d at 277 (affirming the validity of a statute requiring prisoners to pay a portion of filing fees based on ability to pay).

**30.** *Cf. Hageland Aviation Serv., Inc. v. Harms,* 210 P.3d 444, 453 ("Chapter 19 substantially impaired the overtime compensation provision of the parties' employment agreement when Chapter 19 'totally eliminated' the pilots' claims for unpaid overtime wages.").

tions.[31] We see no evidence of any bias in the record. And Hertz waived the issue in any event by failing to move for disqualification in the superior court.[32]

## IV. CONCLUSION

We REVERSE the court's ruling that Hertz was adequately served, but hold that AS 33.30.201(d) and AS 09.38.030(f)(5) do not conflict and are not ambiguous, that AS 09.38.030(f)(5) is not an *ex post facto* law, and that AS 09.38.030(f)(5) does not violate the contract clause of the Alaska Constitution or United States Constitution. We AFFIRM

the superior court's rulings that Hertz's trust account is subject to execution and that the State's attorney should not be sanctioned.

CARPENETI, Chief Justice and FABE, Justice, not participating.

---

**31.** Judge Collins corrected herself by granting Hertz's motion for reconsideration and reviewing Hertz's response to the State's objections.

**32.** *See Brandon v. Corr. Corp. of Am.,* 28 P.3d 269, 280 (Alaska 2001) ("A party may not raise an issue for the first time on appeal."). Our court uses "independent judgment when deter-

mining whether an issue has been waived below due to inadequate briefing." *Lauth v. State,* 12 P.3d 181, 184 (Alaska 2000) (citing *Wilkerson v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.,* 993 P.2d 1018, 1021 (Alaska 1999)).